IN THE MATTER OF THE ESTATE OF BRITT MILLIS ARMFIELD, II, AN INCOMPETENT

No. 9318SC102

(Filed 1 February 1994)

**Guardianship § 97 (NCI4th)— interests of ward and guardian— potential conflict—removal of guardian allowed by statute**

N.C.G.S. § 35A-1290(b)(7) authorizes the removal of a guardian where there is a showing of any potential for conflict between the interests of the ward and those of the guardian. Removal of the guardians of the estate of an incompetent

IN RE ESTATE OF ARMFIELD

[113 N.C. App. 467 (1994)]

ward was proper where the guardians have formed corporations which do business with corporations in which both the guardians and the ward own stock and thus have private interests that might tend to hinder or be adverse to carrying out their duties as guardians.

**Am Jur 2d, Guardian and Ward §§ 57-59.**

Appeal by respondents from order filed 14 October 1992 in Guilford County Superior Court by Judge Melzer A. Morgan, Jr. affirming the order of the Assistant Clerk of Superior Court removing respondents as co-guardians of Britt Millis Armfield, II. Heard in the Court of Appeals 1 December 1993.

On 8 February 1991, Edward Armfield, Sr. filed a petition to remove Edward M. Armfield, Jr. and Everette C. Sherrill, respondents, as guardians of the estate of Britt Millis Armfield, II, the ward. On 29 April 1991, the Assistant Clerk of Superior Court entered an order staying the action pending resolution of two declaratory judgment actions filed in Surry County Superior Court. Petitioner appealed the order to the Superior Court, and, on 20 December 1991, Judge Peter M. McHugh entered an order vacating the order staying the proceeding and remanding the proceeding to the Clerk of Superior Court with directions to render a determination on the merits of the petition. On 17 January 1992, the respondents filed notice of appeal to this Court. By order dated 7 April 1992, this Court dismissed the appeal.

The Assistant Clerk of Superior Court held a hearing on the petition to remove respondents and on 10 July 1992 entered an order removing respondents as guardians of the ward, appointing First Citizens Bank and Trust Company as successor guardian, and directing respondents to deliver possession of all the assets of the estate of the ward to the successor guardian. On 29 July 1992, Judge Thomas W. Ross entered an order staying the order of the Assistant Clerk pending an appeal by respondents to Superior Court. On 13 October 1992, Judge Melzer A. Morgan, Jr. entered an order affirming the removal of respondents as guardians of Britt Millis Armfield, II. On 19 October 1992, respondents filed notice of appeal from Judge Morgan's order to this Court. On 20 October 1992, respondents filed a motion to stay the effect of the 13 October 1992 order pending appeal to this Court. On 3 November 1992, Judge Morgan denied the motion. On 6 November

1992, respondents renewed their notice of appeal from Judge McHugh's 20 December 1991 order and filed notice of appeal from Judge Morgan's 3 November 1992 order.

> *McNairy, Clifford & Clendenin, by R. Walton McNairy; and Wyatt, Early, Harris, Wheeler & Hauser, by Thomas E. Terrell, Jr., for petitioner-appellee.*

> *Nichols, Caffrey, Hill, Evans & Murrelle, by Lindsay R. Davis, Jr. and Richard J. Votta, for respondent-appellants.*

WELLS, Judge.

These proceedings were initiated and determined pursuant to the pertinent provisions of Chapter 35A, Incompetency and Guardianship, N.C. Gen. Stat. Chapter 35A (1987). The Clerk of Superior Court has the responsibility and authority to appoint guardians for incompetent persons. Article 5, Chapter 35A. Article 13 of the Act provides for termination of guardianship, and § 35A-1290 provides in pertinent part:

> (a) The clerk has the power and authority on information or complaint made to remove any guardian appointed under the provisions of this Subchapter, to appoint successor guardians, and to make rules or enter orders for the better management of estates and the better care and maintenance of wards and their dependents.

> (b) It is the clerk's duty to remove a guardian or to take other action sufficient to protect the ward's interest in the following cases:

> \* \* \* \*

> (7) The guardian has a private interest, whether direct or indirect, that might tend to hinder or be adverse to carrying out his duties as guardian.

In this case, the Assistant Clerk applied the provisions of § 35A-1290(b)(7) in finding and concluding that respondents had private interests, both direct and indirect, that might tend to hinder or be adverse to carrying out their duties as guardians. The questions presented to the Superior Court on appeal from the Assistant Clerk and to this Court on appeal from the Superior Court are: (1) whether the Assistant Clerk's findings of fact are supported by the evidence, and (2) whether those findings support the Assist-

ant Clerk's conclusions and order. *In re Estate of Lowther*, 271 N.C. 345, 156 S.E.2d 693 (1967); *In re Estate of Moore*, 25 N.C. App. 36, 212 S.E.2d 184, *cert. denied*, 287 N.C. 259, 214 S.E.2d 430 (1975).

The Assistant Clerk's dispositive findings of fact, not challenged by respondents and therefore deemed to be supported by the evidence, are as follows:

FINDINGS OF FACT

1.

Britt Millis Armfield, II, born December 8, 1947, is a ward of this Court who was adjudicated incompetent by a Guilford County jury on December 23, 1968. . . . Letters of Trusteeship pursuant to former N.C.G.S. § 33-1 *et seq.* were issued to Edward M. Armfield, Jr. on February 18, 1969, and on November 28, 1979 letters were issued appointing Everette C. Sherrill as Co-Trustees (hereinafter "Co-Guardians").

2.

Petitioner, Edward M. Armfield, Sr. is the natural parent of the Ward. The Ward's mother, Mary McKissick Armfield, died on November 23, 1980.

3.

The Ward is one of Petitioner's four children: Jean A. Armfield Sherrill, Edward M. Armfield, Jr., Britt Millis Armfield, II, and Ellison M. Armfield. The co-guardian, Everette C. Sherrill is married to the Ward's sister, Jean Armfield Sherrill.

4.

The Ward is expected to remain incompetent for the duration of his natural life.

5.

Among the assets of the guardianship estate are shares of stock in Armtex, Inc. ("Armtex") which is a closely held, family-owned corporation. The Armtex stock is owned as follows:

| | | |
|---|---|---|
| Edward M. Armfield, Sr. | 81-1/4 shares | 46.4% |
| Jean Armfield Sherrill | 25 shares | 14.3% |
| Edward M. Armfield, Jr. | 25 shares | 14.3% |
| Ellison M. Armfield | 25 shares | 14.3% |
| Britt M. Armfield, II | 18-3/4 shares | 10.7% |

As of December 31, 1991, Armtex had a book value or net worth of $21,362,989. The book value of Britt Armfield's Armtex stock was $2,285,840. The Co-guardians vote Britt Armfield's stock in Armtex. The Co-guardians have private interests in Armtex, direct and indirect, through stock ownership (Sherrill through his wife, Jean), employment, the exercise of day-to-day management, officer positions, and membership on its Board of Directors.

Edward Armfield, Jr. is the Chief Executive Officer and Chairman of the Board of Directors of Armtex. Everette Sherrill is the President of Armtex and a member of the Board of Directors. Jean Armfield Sherrill is a member of the Board of Directors. . . .

6.

Surry Industries, Inc. ("Surry") is another closely held, family-owned corporation. Surry's major customer is Armtex. Armtex manages Surry pursuant to a management agreement for a fee. Its stock is owned as follows:

| | | |
|---|---|---|
| Edward M. Armfield, Sr. | 228 shares | 45.6% |
| Jean Armfield Sherrill | 68 shares | 13.6% |
| Edward M. Armfield, Jr. | 68 shares | 13.6% |
| Ellison M. Armfield | 68 shares | 13.6% |
| Britt M. Armfield, II | 68 shares | 13.6% |

As of December 31, 1991, Surry had a book value or net worth of $26,678,713. The book value of Britt Armfield's stock was $3,628,305. Britt Armfield's stock in Surry Industries, Inc. is held in trust by Wachovia Bank & Trust Co. pursuant to an irrevocable Trust created by Mr. Armfield, Sr. and Mrs. Armfield in 1957. Edward, Jean and Ellison Armfield form an Advisory Committee which advises Wachovia Bank regarding that stock. Wachovia Bank, as Trustee, votes Britt Armfield's stock in Surry. The Co-guardians have private interests in Surry, direct and indirect, through stock ownership (Sherrill

through his wife, Jean), management, as well as being officers and directors.

Everette Sherrill is the Chief Executive Officer and Chairman of the Board of Directors of Surry. Edward Armfield, Jr. is President of Surry and a member of the Board of Directors. Jean Armfield Sherrill is a member of the Board of Directors. . . .

### 7.

Technical Wire Products is another closely held family-owned corporation. Technical Wire is a New Jersey corporation with its stock owned as follows:

| | | |
|---|---|---|
| Edward M. Armfield, Sr. | 1,253.3345 | (50.1%) |
| Jean Armfield Sherrill | 332.4468 | |
| Edward M. Armfield, Jr. | 332.4468 | |
| Ellison M. Armfield | 332.4468 | |
| Britt M. Armfield, II | 249.3351 | |

As of December 31, 1991, Technical Wire had a book value or net worth of $16,374,624. The book value of Britt Armfield's stock was $1,637,462. The Co-guardians vote Britt Armfield's stock in Technical Wire. The Co-guardians have a private interest, direct and indirect, in Technical Wire, through stock ownership (Sherrill through his wife, Jean) but are not officers. Edward M. Armfield, Sr., by virtue of stock ownership, controls Technical Wire.

* * * *

### 13.

Refloat, Inc. is a corporation owned entirely by Edward Armfield, Jr., Jean Armfield Sherrill, and Ellison M. Armfield who also serve with Co-guardian Everette Sherrill and Frank Lord, as officers and/or on the Board of Directors. . . .

### 14.

Since 1986, Refloat has entered into numerous and substantial transactions in which it has leased equipment to Armtex, a corporation in which the Ward has a substantial minority interest. . . . The leasing transactions pay rent from Armtex, in which the Ward and Co-guardians have a private interest to Refloat, direct or indirect, and the Ward does not.

IN RE ESTATE OF ARMFIELD

[113 N.C. App. 467 (1994)]

15.

From 1986 through December 31, 1991, Armtex paid Refloat, for real property leases, the sum of $2,993,200 and the sum of $15,590,151 for equipment leases. From 1986 through December 31, 1991, Refloat's increase in net worth was $8,483,818. Refloat's sole source of income, other than interest from investments, was from Armtex lease payments. On December 31, 1991, Refloat had a net worth of $12,007,912. . . .

16.

Edward Armfield, Jr., Jean Armfield Sherrill and Ellison M. Armfield are also the sole owners of JE&E, a partnership formed in 1988. JE&E then borrowed $800,000 from Surry, a company in which the partners of JE&E and also the Ward own a substantial minority interest. . . .

17.

The funds JE&E borrowed from Surry were used to construct a building which was leased to Armtex, a company in which the Ward owns a substantial minority interest. . . . The building was leased to Armtex as an office building (it also houses Refloat's offices at no cost to Refloat) for 15 years at a rent of $31,200 per quarter. . . .

* * * *

20.

Edward M. Armfield, Jr. and Everette Sherrill have private interests, both direct and indirect, that might tend to hinder or be adverse to carrying out their duties as guardians.

* * * *

Upon the foregoing findings, the assistant clerk made the following conclusion:

CONCLUSIONS OF LAW

1.

Edward M. Armfield, Jr. and Everette Sherrill have private interests, both direct and indirect, that might tend to hinder or be adverse to carrying out their duties as guardians.

* * * *

It was upon these findings and this conclusion that the Assistant Clerk applied the statute to order respondents' removal. We are not aware of any previous decision of our appellate courts interpreting § 35A-1290(b)(7), but we find guidance and direction in previous decisions of our courts in the area of the administration of estates and trusts.

Chapter 28A of our General Statutes, dealing with the administration of decedent's estates, contains a removal provision identical in legal context to § 35A-1290(b)(7). Respondents argue that the Superior Court erred in affirming the order of the Assistant Clerk granting the petition to remove respondents as guardians of Britt Millis Armfield, II because removal under § 35A-1290(b)(7) requires a showing that the private interest of the guardian has an actual and adverse effect upon the interests of the ward.

In *In re Moore*, 292 N.C. 58, 231 S.E.2d 849 (1977), our Supreme Court concluded that "it is not necessary to show an actual conflict of interest to justify a refusal to issue letters of administration; it is sufficient that the likelihood of a conflict is shown." Cause for revocation of letters under § 28A-9-1 exists "when conditions arise after [a personal representative's] appointment which will prevent him from faithfully and impartially executing the duties which he has assumed." *Id.* Consistently, this Court has held that, "a person occupying a place of trust and confidence may not place himself in a position where his own interest may conflict with the interest of those for whom he acts." *Moore v. Bryson*, 11 N.C. App. 260, 181 S.E.2d 113 (1971).

A guardianship is a trust relation and in that relationship the guardian is a trustee who is governed by the same rules that govern other trustees. *Owen v. Hines*, 227 N.C. 236, 41 S.E.2d 739 (1947). A guardian, like a personal representative, acts in a fiduciary capacity. N.C. Gen. Stat. §§ 32-2 (1991) and 36A-1(a) (1991); *Moore, supra*. A fiduciary is charged with the duty of acting for the benefit of another party as to matters coming within the scope of the relationship. N.C. Gen. Stat. § 36A-1(a). The duties of a fiduciary include the duty of loyalty and the tradition surrounding this duty is "unbending and inveterate." *Trust Co. v. Johnston*, 269 N.C. 701, 153 S.E.2d 449 (1967) (*quoting Meinhard v. Salmon*, 249 N.Y. 458, 164 N.E. 545 (1928). In interpreting § 35A-1290(b)(7), we must honor this tradition.

**IN RE ESTATE OF ARMFIELD**

[113 N.C. App. 467 (1994)]

When the language of a statute is clear and unambiguous, the courts must give the statute its plain and definite meaning and are without power to interpolate or superimpose provisions and limitations not contained therein. *State v. Camp*, 286 N.C. 148, 209 S.E.2d 754 (1974). The words "might tend" in § 35A-1290(b)(7) establish a minimal showing of possible conflicting interest for the removal of a guardian. The word "tend" is defined as "to be likely or to be disposed or inclined," and the word "might" is defined as "used to indicate a possibility or probability that is weaker than may." The American Heritage Dictionary (Second College Edition 1982). We hold, therefore, that § 35A-1290(b)(7) authorizes the removal of a guardian where there is a showing of any potential for conflict between the interests of the ward and those of the guardian.

The record in this case discloses substantial potential for conflict between the interests of the ward and respondents. Because respondents are governed by the same rules that govern other trustees they are "held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. . . . Only thus has the level of conduct for fiduciaries been kept at a higher level than that trodden by the crowd." *Trust Co., supra (quoting Meinhard, supra)*. The standard established by § 35A-1290(b)(7) acknowledges and confirms the "unbending and inveterate" tradition of fiduciary duty.

Applying the facts in this case to the foregoing principles of law, we hold that the trial court did not err in affirming the order of the Assistant Clerk removing respondents as guardians. The evidence supports the findings of fact and the findings support the conclusion of law that respondents have private interests, both direct and indirect, which might tend to hinder or be adverse to carrying out their duties as guardians.

Based upon our holding, respondents' other assignments of error are without merit and the order of the trial court is

Affirmed.

Chief Judge ARNOLD and Judge EAGLES concur.