In re Harlon P. HRYHORCHUK, f/d/b/a The Tack Shop, Debtor.

**OHIO CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**Harlon P. HRYHORCHUK and Brownsville Bank, Defendants.**

**Bankruptcy No. 94–12227–H. Adversary No. 95–5062.**

United States Bankruptcy Court, W.D. Tennessee, Eastern Division.

Aug. 4, 1997.

Laura Williams, Jackson, TN, for Plaintiff.

Timothy B. Latimer, Jackson, TN, for Defendant Hryhorchuk.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

JENNIE D. LATTA, Bankruptcy Judge.

Before the court is the plaintiff Ohio Casualty Insurance Company's motion for partial summary judgment as to the defendant Harlon P. Hryhorchuk. The plaintiff seeks a nondischargeable judgment against Hryhorchuk in the amount of $348,938.84, together with expenses and attorneys fees, arising out of the defendant's alleged misappropriation of funds held by him in a fiduciary capacity for the benefit of his minor daughters pursuant to 11 U.S.C. § 523(a)(2), (4) and (6). In support of its motion, the plaintiff relies upon two orders entered in the Chancery Court of Haywood County, Tennessee, *In re Patricia Gabrielle Hryhorchuk and Mary Elizabeth Hryhorchuk,* Cause No. R.D. 9281, as well as excerpts from the deposition testimony of Hryhorchuk, taken December 14, 1995. The

defendant Hryhorchuk opposes the motion for summary judgment asserting that there exist genuine issues as to "how much money was used by the Defendant/Debtor and as to how much money was actually the Defendant's." Defendant's Response to Motion filed by Ohio Casualty Insurance Company for Partial Summary Judgment. In other words, the defendant asserts that there are material issues as to the validity and amount of Ohio Casualty's claim. The defendant relies upon the deposition testimony of Hryhorchuk. For the reasons set forth below, the plaintiff's motion for partial summary judgment will be granted. The following constitutes the court's findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 9024. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## I. FACTS

The following background facts are not disputed. On December 16, 1987, Hryhorchuk was appointed legal guardian of his two minor children, Patricia Gabrielle Hryhorchuk and Mary Elizabeth Hryhorchuk, by order of the Chancery Court of Haywood County, Tennessee. As such, Hryhorchuk had control of certain assets acquired by his children from the Estates of Jesse E.W. Caldwell, deceased, and Evelyn Caldwell Hryhorchuk, deceased. In connection with this proceeding, Ohio Casualty issued two bonds in the amount of $50,000 each as surety for the performance of Hryhorchuk as guardian. In 1990, the amount of one of the bonds was increased to $264,059.00, and the amount of the other to $262,558.00. In 1994, Hryhorchuk was ordered to make no further expenditures of the funds held as guardian for his children based upon evidence that the defendant had used those funds for his own personal benefit. The defendant admits that he withdrew virtually all of the funds held by him as guardian for his children and used the funds for the purpose of gambling and in an attempt to salvage his business.

As the result of the defendant's misappropriation of his daughters' funds, Ohio Casualty has paid $348,938.84 on the bonds pursuant to the orders of the Chancery Court of Haywood, County, Tennessee. Ohio Casualty claims the rights of indemnification and subrogation against the defendant. The orders of the Chancery Court are very specific, and for this reason, are quoted in relevant part:

### ORDER FOR PARTIAL PAYMENT ON BONDS

Based upon the previous hearings in this matter and the record as a whole, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1. Ohio Casualty Insurance Company is the issuer of Bond No. 2–691–884–12 in the guardianship of Patricia Gabrielle Hryhorchuk and Bond No. 2–691–885–12 in the guardianship of Mary Elizabeth Hryhorchuk.

2. Ohio Casualty Insurance Company is hereby ordered to pay the sum of $115,846.73 to the Chancery Clerk and Master on Bond No. 2–691–884–12 and the sum of $115,900.34 on Bond No. 2–691–885–12.

3. These amounts shall be a surcharge on these bonds and are only in partial satisfaction of these bonds. Any additional payments on these funds will be subject to further order of this court.

4. The Court orders these payments on the bonds because the guardian, Harlon P. Hryhorchuk, has misappropriated guardianship funds for his own personal use and benefit and has failed to account for guardianship funds.

5. The sum of $115,846.73 on Bond No. 2–691–884–12 is based upon the loss from the Morgan–Keegan account in Memphis of $65,059.73, the cashing of Bank of New York investment in the amount of $25,787.00 and the cashing of a Brownsville Bank certificate of deposit in the amount of $25,000.00.

6. The sum of $115,900.34 on Bond No. 2–691–885–12 is based upon the loss from the Morgan–Keegan account in Memphis of $65,113.34, the cashing of the Bank of New York investment in the amount of $25,787.00 and the cashing of a Brownsville Bank certificate of deposit in the amount of $25,000.00.

Entered this 11 day of January, 1996.

/s/ Chancellor George R. Ellis

The second order provides as follows:

### ORDER FOR FINAL PAYMENT AND RELEASE OF BONDS

Based upon the agreement of the parties and the record as a whole, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1. Ohio Casualty Insurance Company, as issuer of a bond in the guardianship of Patricia Gabrielle Hryhorchuk, is hereby ordered to pay the sum of $56,332.75 to the Chancery Clerk and Master on Bond No. 2–691–884–12.

2. Ohio Casualty Insurance Company, as the issuer of a bond in the guardianship of Mary Elizabeth Hryhorchuk, is hereby ordered to pay the sum of $60,859.02 on Bond No. 2–691–885–12.

3. These amounts shall be a surcharge on these bonds and are in full satisfaction of these bonds.

4. The Court orders these payments on the bonds because the guardian, Harlon P. Hryhorchuk, has misappropriated guardianship funds for his own personal use and benefit and has failed to account for guardianship funds.

5. The sum of $56,332.75 on Bond No. 2–691–884–12 is based upon the loss from a certificate of deposit of $43,832.75, and the loss of farm rents in the amount of $12,500.00.

6. The sum of $60,859.02 on Bond No. 2–691–885–12 is based upon the loss from a certificate of deposit in the amount of $48,359.02 and the loss of farm rents in the amount of $12,500.00.

7. Upon payment of the amounts specified herein, Ohio Casualty Insurance Company is hereby released in full from any and all further liability on the bonds desert bed herein, and the bonds are released and discharged in full.

ENTERED this 6 day of March, 1997.

/s/ Chancellor George R. Ellis

## II. ANALYSIS

### A. Standard for Granting Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "In determining whether the non-moving party has raised a genuine issue of material fact, '[t]he evidence of [the non-moving party] is to be believed, and all justifiable inferences are to be drawn in [his] favor.'" *PSI Repair Servs., Inc. v. Honeywell, Inc.*, 104 F.3d 811, 814 (6th Cir.1997) (quoting *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 2076, 119 L.Ed.2d 265 (1992)).

### B. Validity of Ohio Casualty's Claim

■ The determination of whether Ohio Casualty holds a nondischargeable claim against Hryhorchuk is a two-step process. First, the validity of a creditor's claim is determined by state law. *Grogan v. Garner*, 498 U.S. 279, 282, 111 S.Ct. 654, 657, 112 L.Ed.2d 755 (1991). Second, the issue of nondischargeability is determined under federal law. *Id.* The court will first look to the validity of the claim asserted by Ohio Casualty.

■ Because the surety bonds were executed in Tennessee state court and under Tennessee law, the court looks to Tennessee law to determine the rights and obligations of the parties with respect to the bonds. *Major v. General Motors Corp.*, 742 F.Supp. 1357 (M.D.Tenn.1990). Pursuant to Tenn.Code Annotated section 25–3–122, "[s]ureties are entitled to judgment by motion against their principals:

(1) Whenever judgment has been rendered against them as sureties;

(2) Whenever such judgment, or any part thereof, has been paid by the surety."

Tenn.Code Ann. § 25–3–122.

■ The subsections are provided in the alternative; thus, the surety is entitled to

judgment by motion as soon as the judgment is rendered against him, even before payment. A motion made pursuant to this section is an independent and original action. *Major*, 742 F.Supp. at 1357. Ordinarily the action would be brought in the court in which judgment against the surety was rendered. *Id.* at 1358. Here the action is properly commenced in the bankruptcy court in the first instance where the plaintiff also seeks a determination of the dischargeability of the liability.

■ There is no dispute that the relationship of principal and surety was established between the plaintiff and Hryhorchuk and that final judgments have been rendered against the plaintiff on account of the bonds in the amount of $348,938.84. Upon establishment of the relationship of principal and surety and the entry of a final judgment against the surety, the surety is entitled to judgment against the principal. *See Chaffin v. Campbell*, 36 Tenn. (4 Sneed) 184 (1856).

The defendant apparently does not dispute that the plaintiff is entitled to judgment against him in some amount and apparently does not dispute that some portion of that judgment should not be dischargeable in bankruptcy. The defendant rather argues that a trial is necessary to determine the amount of any nondischargeable judgment that might be rendered against him by this court. The court thus turns to the consideration of whether the defendant is entitled to a trial on this issue.

The defendant's deposition testimony contains a number of admissions that Hryhorchuk withdrew nearly all of the funds held by him as guardian for his children and used them for his own purposes, including gambling and payment of personal and business obligations. The issue Hryhorchuk attempts to raise in his response to the pending motion for summary judgment is whether some portion of the funds he used were in fact his own funds. Hryhorchuk distinguishes between "guardianship funds" and "custodial funds," with custodial funds consisting of funds he had given to his daughters as opposed to funds his daughters had inherited. Hryhorchuk states:

A. [Hryhorchuk] ... I think when Evelyn died, they had about 40,000, 42,000 a piece in their accounts, which are not—that's not reflected on this. What do you call it?

Q. [Attorney for plaintiff] On the annual settlement?

A. Right.

Q. So you're saying when you did these annual reports of guardianship funds, you were not including what you are calling the custodian funds?

A. Right, because it really wasn't their money. It was my money in their name.

Q. Well, if it was in their name, wasn't it their money?

A. No. . . .

Deposition of Hryhorchuk, pp. 65–66.

These statements by the defendant do not raise a material factual dispute in this litigation. At most, the defendant is simply pointing to other funds available to his children. The defendant does not assert that these "custodial funds" were mistakenly included in the calculation of the amounts of the judgments rendered against Ohio Casualty in the Chancery Court. In fact, the defendant states that he never included the custodial balances in his annual settlements of the guardianship funds filed in the Chancery Court. *See* Deposition of Hryhorchuk, pp. 65, 88. The defendant offers no plausible explanation for why Ohio Casualty would have been ordered to pay on the bonds as the result of the loss of funds that were not reported by him as included in his daughters' estates.

Further, this court is not convinced that the courts of Tennessee would draw the distinction that Hryhorchuk attempts to draw between the types of accounts held by him for the benefit of his children. The court believes that Hryhorchuk was appointed guardian of the property of his children, which would include all of the property of his children, from whatever source. Hryhorchuk's argument that he gave funds to his children, but retained the right to use those funds for his own purposes is disingenuous. Nevertheless, the court need not here determine what the courts of the state of

Tennessee would decide with respect to Hryhorchuk's argument, because the court is persuaded that Hryhorchuk is collaterally estopped from relitigating the validity of Ohio Casualty's claim in this proceeding.

### C. Collateral Estoppel Effect of State Court Judgments

■ The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires federal courts to give full faith and credit to the judicial proceedings of state courts. *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir.1997). Section 1738 of Title 28 United States Code provides, in pertinent part:

> The ... judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken.

28 U.S.C. § 1738 (as quoted in *Calvert*, 105 F.3d at 317). In applying section 1738, federal courts must look to the preclusion law of the state which rendered the judgment. *Calvert*, 105 F.3d at 317 (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985)).

■ In Tennessee, the doctrine of collateral estoppel, or issue preclusion, is applied " 'when an issue has been actually and necessarily determined in a former action between the parties.' " *Blue Diamond Coal Co. v. Holland–America Ins.* 671 S.W.2d 829, 832 (Tenn.1984) (quoting *King v. Brooks*, 562 S.W.2d 422, 424 (Tenn.1978)). Under the doctrine, "the same facts and questions '... may not again be litigated in a subsequent action between the same parties or their privies.' " *Harris v. St. Mary's Medical Center, Inc.*, 726 S.W.2d 902, 904 (Tenn.1987) (quoting *Booth v. Kirk*, 53 Tenn.App. 139, 381 S.W.2d 312 (1963)). "The application of collateral estoppel requires identity of issues and identity of parties or their privies." *Blue Diamond Coal Co.*, 671 S.W.2d at 832. Privity within the meaning of the doctrine of res judicata, of which the doctrine of collateral estoppel is an extension, "is privity as it exists in relation to the subject matter of the litigation." *Harris*, 726 S.W.2d at 904. " 'The term privity denotes mutual * * * relationship to the same rights of property. The ground, therefore, upon which persons standing in this relation to the litigating party are bound by the proceedings to which he was a party is that they are identified with him in interest, and whenever this identity is found to exist, all are alike concluded.' " *Fultz v. Fultz*, 180 Tenn. 327, 175 S.W.2d 315, 316 (1943) (quoting 24 AM. & ENG. ENCY. LAW, p. 746). *See also Mazziotti v. Allstate Ins. Co.*, which states:

> While it is commonly recognized that privity is difficult to define, the concept exists to ensure that the interests of the party against whom collateral estoppel [or res judicata] is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding.... A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity....

*Mazziotti*, 240 Conn. 799, 695 A.2d 1010, 1017 (1997) (quoting *Aetna Casualty & Surety Co. v. Jones*, 220 Conn. 285, 304 596 A.2d 414 (1991)).

■ A surety is one who "undertakes to pay money or to do any other act in the event that his principal fails therein." *United States Fid. & Guar. Co. v. Cassel Bros. (In re McNeil)*, 22 B.R. 408, 413 (Bankr. E.D.Tenn.1982) (quoting BLACK'S LAW DICTIONARY 1611 (4th ed.1951)). Generally, a surety is not liable unless its principal is liable on the bond. *See Lexington Hous. Auth. v. Continental Cas. Co.*, 210 F.Supp. 732, 734 (W.D.Tenn.1962) (citing *City of Nashville v. Singer & Johnson Fertilizer Co.*, 127 Tenn. 107, 153 S.W. 838 (1913); 50 Am. Jur., Suretyship, Sec. 30). A surety is said to stand in the shoes of his principal. *In re Darwin's Estate*, 503 S.W.2d 511 (Tenn. 1973). In determining the liability of the surety Ohio Casualty, the chancellor necessarily determined the extent of the liability of its principal Hryhorchuk. Under the doctrine of collateral estoppel, Hryhorchuk may not relitigate that issue in this court.

### D. Dischargeability of Debts Arising Out of Fraud or Defalcation While Acting In A Fiduciary Capacity

Bankruptcy Code section 523(a)(4) excepts from discharge any debt incurred by an indi-

vidual "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). There is no dispute that the defendant occupied a fiduciary capacity with respect to his guardianship of his children's property. The leading American legal dictionary has explained the term "fiduciary capacity" thus:

> One is said to act in a "fiduciary capacity" or to receive money or contract a debt in a "fiduciary capacity" when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relationship implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other. The term is not restricted to technical or express trusts, but includes such offices and relations as those of an attorney at law, *a guardian*, executor, or broker, a director of a corporation, and a public officer.

BLACK'S LAW DICTIONARY 432 (abridged 6th ed.1991) (emphasis added).

"Defalcation" is defined as follows:

> ... For purposes of Bankruptcy Code section making nondischargeable a debt for fraud or defalcation by debtor while acting in a fiduciary capacity, is failure to meet an obligation, misappropriation of trust funds or money held in any fiduciary capacity, and failure to properly account for such funds.

BLACK'S LAW DICTIONARY 288 (abridged 6th ed.1991).

■■■■■ Collateral estoppel principles apply in nondischargeability proceedings under the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The chancellor made specific factual findings to support the entry of the judgments against Ohio Casualty. The chancellor specifically ordered Ohio Casualty to pay on the bonds "because the guardian, Harlon P. Hryhorchuk, has misappropriated guardianship funds for his own personal use and benefit and has failed to account for guardianship funds." Hryhorchuk is bound by these factual findings in this proceeding.

Ohio Casualty has thus established the validity of its claim and that the claim resulted from the defalcation of Hryhorchuk while acting in a fiduciary capacity. All of the required elements of Bankruptcy Code section 523(a)(4)[1] having been met, judgment shall be entered for Ohio Casualty in the amount of $348,938,84, which shall be nondischargeable in this or any subsequent bankruptcy case filed by the defendant.

### E. Ohio Casualty's Claim For Expenses and Attorneys Fees

Although the plaintiff's Second Amended Complaint contains a prayer for expenses and attorneys fees, the issue of Ohio Casualty's entitlement to expenses and fees was not addressed by either of the parties in connection with Ohio Casualty's motion for summary judgment. Thus the court reserves the issue of expenses and fees for further proceedings.

### III. ORDER

Based upon the foregoing, it is accordingly ORDERED that:

1. Judgement shall be entered in favor of the plaintiff against the defendant Hryhorchuk in the amount of $348,938.84 which shall not be dischargeable by the defendant in this or any subsequent bankruptcy case filed by him.

2. The Bankruptcy Court Clerk shall set a hearing for consideration of the award of expenses and attorneys fees to the plaintiff.

---

1. The plaintiff argues in the alternative that it is entitled to the entry of a nondischargeable judgment under Bankruptcy Code sections 523(a)(2) and (6). Because the court finds that Ohio Casualty is entitled to judgment under section 523(a)(6), it does not reach these alternative bases of recovery.