In the Matter of Timothy Holland
BARNES, and Lori Ann–Marie
Barnes, Debtors.

Pennsylvania Mutual Casualty
Insurance Company,
Plaintiff,

v.

Timothy Holland Barnes, and
Lori Ann–Marie Barnes,
Defendants.

Bankruptcy No. 03–31752RFH.
Adversary No. 03–3071.

United States Bankruptcy Court,
M.D. Georgia,
Athens Division.

Nov. 8, 2004.

Anne L. Blitch, Anthony L. Sanacory, Neil P. Olack, Atlanta, GA, Neil P. Olack, Jackson, MS, Gary W. Wilson, Salil P. Patel, Philadelphia, PA, for Plaintiff.

Jerry C. Carter, Jr., Gainesville, GA, for Defendants.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, JR., Chief Judge.

Pennsylvania National [sic] Mutual Casualty Insurance Company, Plaintiff, filed a motion for summary judgment on August 20, 2004. Timothy Holland Barnes and Lori Ann–Marie Barnes, Defendants, filed a response on September 13, 2004. The Court, having considered the record

and the arguments of counsel, now publishes this memorandum opinion.

"A motion for summary judgment should be granted when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P 56(c). '[T]he plain language of Rule 56(c) mandates the entry of summary judgement... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir.1996). On a summary judgement motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *See Cast Steel [Products, Inc. v. Admiral Ins. Co.]*, 348 F.3d [1298]at 1301 [(11th Cir.2003)]." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1223 (11th Cir.2004).

Defendants are the parents of Abigail Hope Barnes ("Ms. Barnes"). Ms. Barnes was injured at birth by medical malpractice. Ms. Barnes, as a result of her injury, has cerebral palsy and requires full-time care. Ms. Barnes received personal injury settlements for her injury. First Citizens Bank was appointed guardian of the funds in the Estate of Abigail Hope Barnes (the "Barnes Estate").

In February 1999, guardianship was transferred to Defendants for the purpose of administering the funds in the Barnes Estate. Defendants were required to provide a guardian bond to ensure their faithful performance. Defendants obtained a bond for $450,000 from Plaintiff. Defendants executed a General Agreement of Indemnity dated February 3, 1999. Defendants were obligated to indemnify Plaintiff against any loss if the bond was executed upon. Defendants were the principals and Plaintiff was the surety under the bond.

In July 1999, Defendants used some of the funds in the Barnes Estate to purchase real property. Defendants operated a hardware store known as Barnes Hardware, Lawn and Feed, Inc. on the real property. Timothy Barnes had prior experience in that type of business. The purpose of operating Barnes Hardware was to enable Ms. Barnes to have contact with people in the community and to give Ms. Barnes "something for the future." Barnes Hardware was successful until a Wal–Mart was built nearby.

In January 2001, the Clerk of Superior Court, Onslow County, North Carolina, held a hearing inquiring into Defendants' management of the Barnes Estate. The style of the hearing shows that it was conducted "In the General Court of Justice, Superior Court Division, Before the Clerk." The clerk, an assistant clerk, Defendants, and Attorney Fisher[1] attended the hearing. The assistant clerk conducted the hearing. Defendant Lori Barnes testified at the hearing. The assistant clerk determined that Defendants had failed entirely to comply with their fiduciary responsibilities. Defendants contend that they were not given an opportunity to explain their use of funds. An order was entered removing Defendants as guardians. The order was signed by the assistant clerk. Kevin McConnell, Public Guardian for Onslow County, was appointed successor guardian. Defendants relied

---

1. The record does not disclose who Attorney Fisher represented.

upon advice from their counsel in not appealing their removal.

In April 2001, Mr. McConnell demanded that Plaintiff honor its guardian bond. Plaintiff paid $375,000 to the Barnes Estate to satisfy the demand. Mr. McConnell, as successor guardian, assigned and transferred to Plaintiff any claims or causes of action which he may have against Defendants.

Barnes Hardware closed in June 2001. Defendants and Ms. Barnes moved to Georgia in September 2001. Defendants contend that, as guardians, they always acted in Ms. Barnes's best interests.

■ Plaintiff demanded that Defendants honor their indemnity agreement. Plaintiff and Defendants executed on December 12, 2001, a Confession of Judgment, which authorized the state court to enter judgment in favor of Plaintiff for $432,230.28 [2] plus attorney fees of $17,427.20. Defendants executed the Confession of Judgment on advise of their counsel.[3]

Defendants filed a petition under Chapter 7 of the Bankruptcy Code on August 19, 2003. Plaintiff filed this adversary proceeding on December 23, 2003. Plaintiff contends that Defendants' obligations are nondischargeable under section 523(a)(4) of the Bankruptcy Code.

Section 523(a)(4) provides:

§ 523. **Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), or 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

11 U.S.C.A. § 523(a)(4) (West 1993).

■ Plaintiff has the burden of proving all facts essential to support its objection to dischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Exceptions to dischargeability are to be construed strictly. *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986). "The exceptions to discharge were not intended and must not be allowed to swallow the general rule favoring discharge." *Murphy & Robinson Investment Co. v. Cross (In re Cross)*, 666 F.2d 873, 880 (5th Cir. Unit B 1982).

Plaintiff contends that Defendants' obligations arose from defalcations while acting in a fiduciary capacity. First, Plaintiff must show that Defendants were acting in a fiduciary capacity. *Collier on Bankruptcy* states:

**(c)—The Meaning of "While Acting in a Fiduciary Capacity": § 523(a)(11); § 523(e).**

. . .

For purposes of section 523(a)(4), the definition of "fiduciary" is narrowly construed, meaning that the applicable state law that creates a fiduciary relationship must clearly outline the fiduciary duties and identify the trust property; if state law does not clearly and expressly impose trust-like obligations on a party, the court will not assume that such duties exist and will not find that there was a fiduciary relationship.

---

**2.** The judgment was later reduced to $375,000.

**3.** A nondischargeable debt arising from fraud or defalcation does not become a dischargeable debt because the parties subsequently enter into a settlement agreement. *Greenberg v. Schools*, 711 F.2d 152, 153 (11th Cir.1983).

. . .

Certain relationships are generally recognized as involving fiduciary obligations within the meaning of section 523(a)(4). [G]uardians . . . have been held to be acting in a fiduciary capacity within the meaning of this provision. 4 *Collier on Bankruptcy* ¶ 523.10[1][c] (15th ed. rev.2004).

■ Under North Carolina law, a guardianship is a trust relationship. The guardian acts in a fiduciary capacity and is charged with the duty of unbending loyalty. *In re Armfield,* 113 N.C.App. 467, 439 S.E.2d 216, 220 (1994). The guardian is always under a fiduciary obligation to manage the estate reasonably, prudently, and in the ward's best interest. *In re Caddell,* 140 N.C.App. 767, 538 S.E.2d 626, 628 (2000).

North Carolina law imposes specific statutory powers and duties upon guardians in administering a ward's estate. N.C. Gen.Stat. § 35A—1252,—1253. The clerk of superior court has a statutory duty to remove a guardian or take other action to protect the ward's interest if the guardian wastes, converts, mismanages, or neglects the ward's estate, or if the guardian is unsuitable to continue to serve for any reason. N.C. Gen.Stat. § 35A–1290(b),—1203(b); § 7A—103 (14).

■ Defendants do not dispute that they were fiduciaries of the Barnes Estate. The Court is persuaded that Defendants were acting in a fiduciary capacity.

■ Next, Plaintiff must show that Defendants committed a defalcation. In *Quaif v. Johnson* [4], the Eleventh Circuit Court of Appeals stated:

"Defalcation" refers to a failure to produce funds entrusted to a fiduciary. However, the precise meaning of "defal-

cation" for purposes of § 523(a)(4) has never been entirely clear. An early, and perhaps the best, analysis of this question is that of Judge Learned Hand in *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2nd Cir.1937). Judge Hand concluded that while a purely innocent mistake by the fiduciary may be dischargeable, a "defalcation" for purposes of this statute does not have to rise to the level of "fraud," "embezzlement," or even "misappropriation." Some cases have read the term even more broadly, stating that even a purely innocent party can be deemed to have committed a defalcation for purposes of § 523(a)(4).

4 F.3d at 955.

*Collier on Bankruptcy* states in part:

**[b]—"Defalcation" for Purposes of the Fiduciary Debt Exception; Burden of Proof.**

. . .

Since debts arising from breaches of ordinary care are normally dischargeable in bankruptcy, and exceptions to discharge are strictly construed in favor of the debtor, some degree of culpability is required to make a debt nondischargeable as a defalcation under section 523(a)(4). However, when a debtor has been acting as a trustee or other fiduciary, the debtor is responsible for knowledge of the fiduciary responsibilities and may not cite mere ignorance as a defense to an objection to dischargeability asserted under section 523(a)(4).

4 *Collier on Bankruptcy,* ¶ 523.10[1][b] (15th ed. rev.2004).

The order removing Defendants as guardians was entered by the assistant clerk of superior court. Defendants contend that the order is not entitled to res

4. 4 F.3d 950 (11th Cir.1993).

judicata because it was entered by an assistant clerk rather than by a judge.

"The Clerk of Superior Court has original jurisdiction over matters involving the management by a guardian of her ward's estate." *In re Caddell,* 538 S.E.2d at 627–28. *See* N.C. Gen. Stat. § 35A—1203.

The clerk has authority to remove a guardian for cause and to appoint a successor guardian. N.C. Gen.Stat. § 35A—1203(a), (b); § 7A—103(14). "An assistant clerk is authorized to perform all the duties and functions of the office of the clerk of superior court, and any act of an assistant clerk is entitled to the same faith and credit as that of the clerk." N.C. Gen.Stat. § 7A—102(b).

Plaintiff relies upon *Wilson v. Watson.*[5] In that case, Wilson filed a motion to compel an accounting by Watson, the attorney-in-fact of their deceased mother's estate. The motion was filed with the clerk of superior court.[6] The clerk entered an order denying Wilson's request. Wilson did not appeal the order. Wilson then filed a complaint in superior court to compel an accounting. The parties and subject matter in the superior court case were identical to those in the action before the clerk. Watson argued that the complaint filed in superior court was barred by collateral estoppel and res judicata. The North Carolina Court of Appeals agreed. The court first held that the clerk had jurisdiction to enter the order denying Wilson's motion to compel an accounting. The court then held that res judicata barred the complaint filed in the superior court because it sought the same relief as the action before the clerk.

The Court has also considered two other North Carolina cases. In *In re Estate of Lowther,*[7] Mary Lowther represented to the clerk of superior court that she was the widow of Isham Lowther. The clerk appointed Mary Lowther to be the administratrix of the Isham Lowther Estate. The children of Isham Lowther filed a motion with the clerk to remove Mary Lowther as administratrix. The clerk held a hearing and determined that Mary Lowther had never married Isham Lowther. The clerk removed Mary Lowther as administratrix and directed her to provide an accounting. Mary Lowther appealed to the judge of superior court. The judge vacated the clerk's order and set for trial by jury the issue of whether Mary Lowther was the widow of Isham Lowther.

The North Carolina Supreme Court reversed. The court held that when a party takes exception to specific findings of fact by the clerk, the trial judge will review the findings and submit the issues to a jury if he deems it advisable. However, if a party makes a general exception to the clerk's order and does not take exception to specific findings of fact, the trial judge simply determines whether the facts found by the clerk support the conclusion of law. The court noted that even in the later situation, the clerk's findings of fact are not res judicata in any other proceeding between the parties.

In *Shelton v. Fairley,*[8] the beneficiaries of the Thomas M. Shelton Estate filed a motion seeking the removal of the executor. The executor, with court approval, resigned. The court entered an order re-

---

5. 136 N.C.App. 500, 524 S.E.2d 812 (2000).

6. North Carolina law provides that the clerk of superior court has jurisdiction over the administration of decedents' estates. N.C. Gen.Stat. § 28A–2–1.

7. 271 N.C. 345, 156 S.E.2d 693 (1967).

8. 72 N.C.App. 1, 323 S.E.2d 410 (1984).

ducing the executor's commissions and attorney fees from $580,000 to $300,000.

The beneficiaries then filed an action for damages, for an accounting, to surcharge the executor for falsifying accounts, and for breach of fiduciary duty. The executor asserted the defenses of res judicata and collateral estoppel.

The North Carolina Court of Appeals stated, in part:

> The second issue concerns the defense of re judicata and collateral estoppel raised by [the executor]. [The executor] contend[s] that this action for damages is barred by the earlier proceeding to remove the executor and revoke his letters of administration pursuant to N.C.Gen.Stat. 28–32 [the probate code]. We hold that orders entered in a proceeding under N.C.Gen.Stat. 28–32, in which an executor must show cause why he should not be removed, do not constitute re judicata as to a later civil action for damages between the parties or collaterally estop the bringing of such an action.
>
> . . . .
>
> Reasoning as above, courts have carved out exceptions of the doctrine of res judicata based upon policy reasons. Our Supreme Court has recognized an exception in instances where a statutory proceeding to remove an executor may be followed by a later civil action.

323 S.E.2d at 414.

■ Turning to the case at bar, the assistant clerk of superior court determined that Defendants had failed to comply with their fiduciary responsibilities and removed them as guardians. Plaintiff contends that order is decisive in this "later civil action" on the issue of defalcation. The Court is not persuaded that the order entered by the assistant clerk removing Defendants as guardians is entitled to res

judicata in this nondischargeable action. The assistant clerk did not consider whether Defendants committed a defalcation.

■ Defendants contend that they always acted in Ms. Barnes' best interests. The "precise meaning of 'defalcation' for purposes of § 523(a)(4) has never been entirely clear." *Quaif,* 4 F.3d at 955. The Court is persuaded that genuine issues of material facts remain as to whether Defendants committed a defalcation.

■ Finally, Plaintiff must show that it is a proper party to bring this nondischargeability action. Defendants executed a General Agreement of Indemnity in favor of Plaintiff. Defendants were obligated to indemnify Plaintiff against any loss if the guardian bond was executed upon. Defendants were the principals and Plaintiff was the surety under the bond.

North Carolina law provides that a surety who pays his principal's bond may avail himself of any remedy which the creditor might have had against the principal. N.C. Gen.Stat. § 26—3.1.

Plaintiff was called upon to honor its bond. Mr. McConnell, as successor guardian, assigned and transferred to Plaintiff all claims and causes of action which he may have against Defendants. Plaintiff is subrogated to any rights that Mr. McConnell might have asserted against Defendants. This includes the right to contend that Defendants' obligations are nondischargeable under section 523(a)(4). *See Cincinnati Insurance Co. v. Nelson, (In re Nelson ),* 2002 WL 32667216 (Bankr. D.Kan., Feb.26, 2002); *Western Surety Co. v. Daly, (In re Daly ),* 247 B.R. 369, 377–79 (Bankr.S.D.N.Y.2000); *Peerless Insurance v. Swanson, (In re Swanson ),* 231 B.R. 145, 149 (Bankr.D.N.H.1999); *Utica Mutual Insurance Co. v. Johnson, (In re Johnson ),* 203 B.R. 1017, 1020–21 (Bankr. S.D.Ga.1997); *Ohio Casualty Insurance*

*Co. v. Hryhorchuk, (In re Hryhorchuk)*, 211 B.R. 647, 650–52 (Bankr.W.D.Tenn. 1997); *Cincinnati Insurance Co. v. Butts, (In re Butts)*, 142 B.R. 1011 (Bankr. M.D.Fla.1992); *Reliance Insurance Co. v. Wilson, (In re Wilson)*, 127 B.R. 440 (Bankr.E.D.Mo.1991); *Ohio Casualty Insurance Co. v. Kern, (In re Kern)*, 98 B.R. 321 (Bankr.S.D.Ohio 1989); *Western Surety Co. v. Meek, (In re Meek)*, 25 B.R. 58, 60 (Bankr.D.Or.1982); *Aetna Insurance v. Byrd, (In re Byrd)*, 15 B.R. 154 (Bankr. E.D.Va.1981).

Turning to the case at bar, the Court is persuaded that Defendants were fiduciaries and that Plaintiff is a proper party to bring this nondischargeability action. The Court is persuaded that Plaintiff is entitled to partial summary judgment on these issues. The Court is persuaded that there remain genuine issues of material facts as to whether Defendants committed a defalcation because re judicata does not apply to that issue.

An order in accordance with this memorandum opinion will be entered this date.