IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA15-384

 Filed: 21 June 2016

Wake County, No. 10 SP 363, 10 E 291

IN THE MATTER OF THE ESTATE OF CATHLEEN BASS SKINNER

 Appeal by respondent from order entered 22 October 2014 by Judge Donald

Stephens in Wake County Superior Court. Heard in the Court of Appeals 12 January

2016.

 Ward and Smith, P.A., by Jenna Fruechtenicht Butler and Michael J. Parrish,
 for petitioner-appellees.

 Braswell Law, PLLC, by Ira Braswell, IV, for respondents-appellant.

 ZACHARY, Judge.

 Respondent Mark Skinner (“Mr. Skinner”) appeals from the trial court’s order

affirming an order entered by Wake County Assistant Clerk of Court Bill Burlington

(“assistant clerk of court”) removing Mr. Skinner as Trustee of the Cathleen Bass

Skinner Special Needs Trust and as Guardian of the Estate (GOE) of Cathleen Bass

Skinner. On appeal, Mr. Skinner argues that the order of the assistant clerk of court

contains findings that are not supported by the evidence and certain conclusions that

are legally erroneous. For the reasons discussed below, we agree.
 IN RE: SKINNER

 Opinion of the Court

 I. Background

 Cathleen Bass Skinner (Mrs. Skinner) suffers from cognitive and physical

difficulties. On 13 April 2010, the assistant clerk of court adjudicated Mrs. Skinner

to be “incompetent to a limited extent” and appointed “Wake County Human

Services” as Mrs. Skinner’s guardian. The order provided that Mr. Skinner could

apply to become Mrs. Skinner’s guardian in six months. Mrs. Skinner submitted a

handwritten appeal from the clerk’s order, asking that Mr. Skinner be appointed as

her guardian. On 3 August 2010, Mrs. Skinner and Mr. Skinner were married, and

on 4 August 2010, Mr. Skinner filed a motion to modify the guardianship order and

appoint him as Mrs. Skinner’s guardian. The parties to the motion included Mrs.

Skinner, Mr. Skinner, Mrs. Skinner’s Guardian ad Litem, Mary Easterling, Kathy

Shelton,1 and Wake County Human Services. On 20 January 2011, the assistant

clerk of court entered a consent order appointing Mr. Skinner as the guardian of the

person of Mrs. Skinner. On 27 August 2012, Mrs. Skinner’s mother died, and on 23

August 2013, two of Mrs. Skinner’s siblings filed a petition asking the assistant clerk

of court to appoint Mrs. Skinner’s sister Nancy Bass Clark (Mrs. Clark) as GOE for

Mrs. Skinner.

 1 The record indicates that Mary Easterling and Kathy Shelton had each petitioned to be
appointed as Mrs. Skinner’s guardian, and that Mary Easterling was a “family friend.” Both Easterling
and Shelton consented to Mr. Skinner serving as Mrs. Skinner’s guardian and agreed to withdraw
their petitions for guardianship.

 -2-
 IN RE: SKINNER

 Opinion of the Court

 The court appointed Kimberly Richards as temporary GAL for Mrs. Skinner,

and Ms. Richards reviewed the files in this case and interviewed Mr. Skinner, Mrs.

Skinner, and Mrs. Skinner’s family members. Mrs. Skinner informed Ms. Richards

that she wanted Mr. Skinner appointed as her GOE, while Mrs. Skinner’s siblings

preferred that Mrs. Clark be appointed. In her report to the assistant clerk of court,

Ms. Richards stated that:

 By all accounts, Mark Skinner has taken care of Cathy
 Bass Skinner for the past two years and her family has not
 been actively involved in her life. It appeared to me that
 Mark and Cathy care for each other and are actively
 involved in each other’s lives. A family friend, Mary
 Easterling, reports that the couple is loving and happy.

 On 9 October 2013, Mr. Skinner was appointed as the GOE of Mrs. Skinner,

and on 5 December 2013, Mr. Skinner was bonded for $250,000. The GOE order,

which found that Mrs. Skinner’s inheritance was expected to be between $200,000

and $250,000, required that Mr. Skinner set up a Special Needs Trust for Mrs.

Skinner. Accordingly, the Cathleen Bass Skinner Special Needs Trust was

established and executed on 18 March 2014, and provided that Mr. Skinner would

act as Trustee. On 25 March 2014, the assistant clerk of court entered an order

approving the Trust and finding that the parties were “in agreement with the

provisions of the Cathleen Bass Skinner Special Needs Trust,” which included having

Mr. Skinner serve as the Trustee of the Trust. The Trust was funded on 10 June

2014 with an initial distribution from the estate of $170,086.67. Shortly thereafter,

 -3-
 IN RE: SKINNER

 Opinion of the Court

Mr. Skinner used Trust assets to purchase a house where he and Mrs. Skinner live

together, as well as some furniture and appliances.

 On 28 July 2014, two of Mrs. Skinner’s siblings filed a petition to remove Mr.

Skinner as Trustee, on the grounds that Mr. Skinner had not complied with the

Trust’s requirement that Mr. Skinner provide Mrs. Clark with monthly bank

statements. A hearing was conducted on 18 August 2014, at which the parties agreed

that additional issues could be raised. On 27 August 2014, the assistant clerk of court

entered an order removing Mr. Skinner both as GOE and as Trustee of the Cathleen

Bass Skinner Special Needs Trust and replacing him with Mrs. Clark. Mr. Skinner

appealed to the superior court of Wake County, and on 22 October 2014, the trial

court entered a summary order affirming the assistant clerk of court’s order. Mr.

Skinner has appealed to this Court from the trial court’s order.

 II. Standard of Review

 The assistant clerk of court removed Mr. Skinner as both GOE and as Trustee.

N.C. Gen. Stat. § 35A-1290(a) (2015) gives the clerk of court the authority “to remove

any guardian . . . to appoint successor guardians, and to make rules or enter orders

for the better management of estates and the better care and maintenance of wards

and their dependents.” Under N.C. Gen. Stat. § 35A-1290(b) (2015), it “is the clerk’s

duty to remove a guardian” if the guardian “wastes the ward's money or estate or

 -4-
 IN RE: SKINNER

 Opinion of the Court

converts it to his own use,” “mismanages the ward’s estate,” or “has violated a

fiduciary duty through default or misconduct.”

 Regarding the clerk’s authority to remove a trustee, N.C. Gen. Stat. § 36C-7-

706(b) (2015) provides in relevant part that the clerk “may remove a trustee” if “(1)

The trustee has committed a serious breach of trust” or “(3) Because of unfitness,

unwillingness, or persistent failure of the trustee to administer the trust effectively,

the court determines that removal of the trustee best serves the interests of the

beneficiaries[.]”

 N.C. Gen. Stat. § 1-301.3 (2015) provides that a party aggrieved by an order of

the clerk arising from the administration of trusts and estates may appeal to superior

court, and that upon appeal:

 [T]he judge of the superior court shall review the order or
 judgment of the clerk for the purpose of determining only
 the following: (1) Whether the findings of fact are
 supported by the evidence, (2) Whether the conclusions of
 law are supported by the findings of facts, [and] (3)
 Whether the order or judgment is consistent with the
 conclusions of law and applicable law.

 Upon Mr. Skinner’s appeal from the trial court’s order affirming the order

entered by the assistant clerk of court, this Court is called upon to review a non-jury

proceeding. As a general rule:

 The standard of review of a judgment rendered following a
 bench trial is “whether there was competent evidence to
 support the trial court’s findings of fact and whether its
 conclusions of law were proper in light of such facts.”
 “Findings of fact by the trial court in a non-jury trial are

 -5-
 IN RE: SKINNER

 Opinion of the Court

 conclusive on appeal if there is evidence to support those
 findings. A trial court’s conclusions of law, however, are
 reviewable de novo.”

Gilbert v. Guilford County, __ N.C. App. __, __, 767 S.E.2d 93, 95 (2014) (quoting

Hanson v. Legasus of N.C., LLC, 205 N.C. App. 296, 299, 695 S.E.2d 499, 501 (2010)).

“If the court’s findings of fact are supported by competent evidence, they are

conclusive on appeal, even if there is contrary evidence.” Collins v. Collins, __ N.C.

App. __, __, 778 S.E.2d 854, 856 (2015) (citation omitted).

 If the assistant clerk of court’s findings are supported by the evidence and its

conclusions of law are supported by the findings, then the clerk’s decision on the

appropriate action to take is reviewed for abuse of discretion.

 As the removal of a trustee is left to the discretion of the
 clerks of superior court . . . our review is limited to
 determining whether the trial court abused its discretion.
 Under this standard, we accord “great deference” to the
 trial court, and its ruling may be reversed only upon a
 showing that its action was “manifestly unsupported by
 reason” or “so arbitrary that it could not have been the
 result of a reasoned decision.”

In re Estate of Newton, 173 N.C. App. 530, 539, 619 S.E.2d 571, 576 (2005) (quoting

White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)). In determining

whether there was an abuse of discretion, “[w]e may not substitute our own judgment

for that of the trial court.” Kinlaw v. Harris, 364 N.C. 528, 533, 702 S.E.2d 294, 297

(2010) (citing Worthington v. Bynum, 305 N.C. 478, 487, 290 S.E.2d 599, 605 (1982)).

Further, “[i]t is axiomatic that it is within a trial court’s discretion to determine the

 -6-
 IN RE: SKINNER

 Opinion of the Court

weight and credibility that should be given to all evidence that is presented during

the trial.” Don't Do It Empire, LLC v. Tenntex, __ N.C. App. __, __, 782 S.E.2d 903,

__ (2016) (internal quotation omitted). Therefore, in our review of the order entered

by the assistant clerk of court, we are neither “reweighing the evidence” nor

“disregarding the deferential standard of review.” Nor do we express any opinion on

the merits of the clerk’s determination that Mr. Skinner was no longer the best person

to serve as GOE and as trustee, or on the clerk’s assessment of the credibility and

weight of evidence or his resolution of evidentiary inconsistencies.

 However, “an abuse-of-discretion standard does not mean a mistake of law is

beyond appellate correction.” Koon v. United States, 518 U.S. 81, 100, 2047, 135 L.

Ed. 2d 392 (1996). “[F]indings made under a misapprehension of law are not

binding,” and “[w]hen faced with such findings, the appellate court should remand

the action for consideration of the evidence in its true legal light.” Allen v. Rouse

Toyota Jeep, Inc., 100 N.C. App. 737, 740, 398 S.E.2d 64, 65 (1990) (citing Dishman

v. Dishman, 37 N.C. App. 543, 246 S.E.2d 819 (1978) (other citation omitted). “ ‘While

this Court is bound by the findings of fact made by the [trial court] if supported by

evidence, it is not bound by that court’s conclusions of law based on the facts found.’

Accordingly, we review the trial court’s conclusions of law de novo.” State v. Rhodes,

366 N.C. 532, 536, 743 S.E.2d 37, 39 (2013) (quoting State v. Wheeler, 249 N.C. 187,

192, 105 S.E.2d 615, 620 (1958)). In sum, we review for abuse of discretion only those

 -7-
 IN RE: SKINNER

 Opinion of the Court

of the clerk’s decisions that are based upon properly supported findings and legally

correct conclusions:

 In the event that the result reached with respect to a
 particular issue is committed to the sound discretion of the
 trial court, appellate review is limited to determining
 whether the trial court abused that discretion. “A [trial]
 court by definition abuses its discretion when it makes an
 error of law.” As a result . . . the extent to which the trial
 court exercised its discretion on the basis of an incorrect
 understanding of the applicable law raises an issue of law
 subject to de novo review on appeal.

In re A.F., 231 N.C. App. 348, 352, 752 S.E.2d 245, 248 (2013) (quoting Koon, 518 U.S.

at 100, 135 L. Ed. 2d at 414, and citing Rhodes, 366 N.C. at 536, 743 S.E.2d at 39,

and Falk Integrated Technologies, Inc. v. Stack, 132 N.C. App. 807, 809, 513 S.E.2d

572, 574 (1999)).

 In this case, although Mrs. Skinner’s siblings filed the petition to remove Mr.

Skinner as GOE and as Trustee, they did not present any witnesses at the hearing.

Instead, Mr. Skinner was the only witness who testified at the hearing, and

accordingly Mr. Skinner’s testimony was uncontradicted by any other witness. The

assistant clerk of court was free to evaluate the credibility and weight of this

evidence. In addition, the assistant clerk of court properly considered the extent, if

any, to which Mr. Skinner’s testimony was contradicted by the documentary evidence,

such as the GOE order and the Trust instrument. However, the clerk’s findings of

fact necessarily had to be based on his assessment of the competent evidence. “[I]t is

 -8-
 IN RE: SKINNER

 Opinion of the Court

axiomatic that the arguments of counsel are not evidence.” State v. Collins, 345 N.C.

170, 173, 478 S.E.2d 191, 193 (1996).

 III. U.S.C. § 1396p(d)(4)(A) Trust- Introduction

 The term “special needs trust” (SNT) refers generally to a trust created for the

benefit of a disabled person in accordance with governmental and statutory

regulations so that the disabled person maintains his or her eligibility for government

benefits. There are several types of SNTs, each with different specific statutory and

regulatory requirements in order to be effective.

 The Cathleen Bass Skinner Special Needs Trust is a self-settled, sole benefit

trust, established pursuant to 42 U.S.C. § 1396p(d)(4)(A) for the purpose of allowing

Mrs. Skinner to enhance the quality of her life without jeopardizing her eligibility for

Medicaid and Social Security (SSI) benefits. To be eligible for Medicaid and Social

Security disability benefits, an individual’s financial resources must be below a

specified amount. U.S.C. § 1396p(d)(4)(A) states that the assets in a trust will not

count toward an applicant’s available resources, provided that the trust has the

following characteristics:

 (A) A trust containing the assets of an individual under age
 65 who is disabled . . . and which is established for the
 benefit of such individual by a parent, grandparent, legal
 guardian of the individual, or a court if the State will
 receive all amounts remaining in the trust upon the death
 of such individual up to an amount equal to the total
 medical assistance paid on behalf of the individual under a
 State plan under [42 U.S.C. § 1396 et. seq.].

 -9-
 IN RE: SKINNER

 Opinion of the Court

 Thus, a U.S.C. § 1396p(d)(4)(A) trust has three requirements:

 1. It is established for the benefit of a beneficiary who is
 under 65 years old and is disabled.

 2. The trust, despite the label “self-settled,” must be
 established for the benefit of the beneficiary with the assets
 of the beneficiary by a third party such as the beneficiary’s
 parent, a court, etc.

 3. The trust must include a “payback” provision stating
 that upon the death of the beneficiary or the early
 termination of the trust the state will be reimbursed for the
 beneficiary’s Medicaid expenditures before any other
 distribution may be made. Because a U.S.C. §
 1396p(d)(4)(A) trust has a payback provision, it is not
 required to be administered in an “actuarially sound”
 manner whereby the entire trust is distributed during the
 beneficiary’s lifetime.

 In this case, there is no dispute that the Cathleen Bass Skinner Special Needs

Trust meets the requirements set out in U.S.C. § 1396p(d)(4)(A).

 IV. Purpose of U.S.C. § 1396p(d)(4)(A) trust

 In Finding No. 10 of his order, the assistant clerk of court stated that the GOE

order had directed establishment of a special needs trust “in order to preserve those

assets for [Mrs. Skinner’s] long term health needs.” This is an error of fact and law.

 First, the GOE order does not state that the purpose of the Trust is to provide

for Mrs. Skinner’s future medical needs. Thus, this finding is not supported by the

evidence. In addition, because a special needs trust established under U.S.C. §

1396p(d)(4)(A) is, by definition, for the benefit of a person who is disabled and is

receiving Medicaid benefits, its purpose is not to save money for the person’s future

 - 10 -
 IN RE: SKINNER

 Opinion of the Court

medical needs; rather, this type of trust is “intended to provide disabled individuals

with necessities and comforts not covered by Medicaid” while maintaining Medicaid

eligibility. Lewis v. Alexander, 685 F.3d 325, 331 (3rd Cir. 2012), cert. denied, __ U.S.

__, 133 S. Ct. 933, 184 L. Ed. 2d 724 (2013). Accordingly, § 2.03 of the Cathleen Bass

Skinner Special Needs Trust bars the Trustee from using trust funds for “any

property, services, benefits, or medical care otherwise available from any local, state,

or federal governmental source[.]”

 The Cathleen Bass Skinner Special Needs Trust, as a U.S.C. § 1396p(d)(4)(A)

trust, states the following regarding its purpose:

 This Irrevocable Trust is to enable [the] Beneficiary to
 qualify for (i) the Supplemental Security Income (“SSI”)
 Program; (ii) medical assistance under the Medicaid
 program as provided for by Section 1396p(d)(4)(A) of Title
 42 of the United States Code . . . or (iii) any other
 governmental program.

 In addition, § 1.04, Statement of Grantor’s Intent, states that:

 Grantor is creating this trust as a Means by which trust
 assets may be held for the sole benefit of . . . [Mrs. Skinner]
 on the terms and conditions set forth in this instrument.

 It is Grantor’s intent to create a Special Needs Trust that
 conforms to North Carolina law.

 This trust is created expressly for [the] Beneficiary’s
 supplemental care, maintenance, support, and education,
 in addition to the benefits Beneficiary otherwise receives
 or may receive from . . . any local, state or federal
 government, or from any private agency . . . or from any
 private insurance Carriers covering Beneficiary.

 - 11 -
 IN RE: SKINNER

 Opinion of the Court

 It is Grantor’s intent that the funding and administration
 of this trust will not subject Beneficiary to a period of
 ineligibility under Medicaid law pursuant to U.S.C. §
 1396p(d)(4)(A) and North Carolina law. . . .

 Clearly the subject assets were not intended to be used for Mrs. Skinner’s

future medical needs, and in ruling otherwise, the assistant clerk of court made an

error of law.

 V. Mr. Skinner’s Duty to Provide Bank Statements

 Two of Mrs. Skinner’s siblings alleged that Mr. Skinner had failed to comply

with the Trust’s accounting requirement. § 5.04 of the Cathleen Bass Skinner Special

Needs Trust provides that:

 The Trustee shall cause monthly statements reflecting the
 current balance of the Trust’s assets and all receipts,
 disbursements, and distributions made within the
 reporting period to be mailed to Beneficiary, Nancy Bass
 Clark (or to any successor appointed by Nancy Bass Clark),
 and to the Beneficiary’s legal representative. . . .

 ...

 Failure to provide reports, statements or returns within
 seven (7) days after the date such report, statement or
 return was due or became available shall result in the
 disqualification of the Trustee. . . .

 The petition for Mr. Skinner’s removal as Trustee alleged, not that Mr. Skinner

had failed to provide bank statements, but that a recent bank statement indicated

that Mr. Skinner had “us[ed] a debit transaction in order to obtain cash - thus hiding

the purpose and entity to which Trust funds are being transferred.” At the hearing,

 - 12 -
 IN RE: SKINNER

 Opinion of the Court

Mr. Skinner testified that when the Trust was first established he had no printed

checks and therefore used cashier’s checks to pay for several expenditures. The bank

statement did not show the payee of the cashier’s checks, so Mr. Skinner later

provided Mrs. Clark with this information. Thus, it was undisputed that Mr. Skinner

did send bank statements, but that he had used several cashier’s checks that did not

reveal the purpose for which the money was spent.

 This evidence does not appear to establish that, as a matter of law, Mr. Skinner

breached the trust’s accounting requirement. However, we need not resolve this

issue, given that the assistant clerk of court’s order does not mention Mr. Skinner’s

compliance or lack of compliance with the accounting requirement. Had the assistant

clerk of court found that Mr. Skinner breached the Trust’s provision requiring

accounting, we could review the clerk’s findings and conclusions on this issue.

However, the clerk made no such findings or conclusions and it is axiomatic that “[a]n

appellate court does not weigh the evidence in order to make new findings[.]”

Timmons v. North Carolina DOT, 351 N.C. 177, 182, 522 S.E.2d 62, 65 (1999).

 VI. Prepaid Burial Insurance

 In Finding No. 24 of his order, the assistant clerk of court states that the “trust

specifically states that funeral expenses are not permitted to be paid from the Trust

prior to reimbursement to North Carolina (or any other state) for medical expenses.”

This finding is factually inaccurate. On the basis of this finding, the assistant clerk

 - 13 -
 IN RE: SKINNER

 Opinion of the Court

of court concludes in Conclusion of Law No. 4 that “Mr. Skinner’s payment of

$3,644.00 to Columbus Life for prepaid funeral expenses also is in contradiction to

the terms of the Trust and in violation of his fiduciary duties as Trustee.” This

conclusion of law is in error.

 A trust established under U.S.C. § 1396p(d)(4)(A), such as the Cathleen Bass

Skinner Special Needs Trust, must provide for reimbursement of Medicaid payments

upon the death of the beneficiary or early termination of the trust. Accordingly,

Article Four of the Trust, “Administration of the Cathleen Bass Skinner Special

Needs Trust upon Beneficiary’s Death,” provides in relevant part that:

 Upon Beneficiary’s death, the Trustee shall notify the
 appropriate state agency of Beneficiary’s death and must
 promptly obtain an accounting from the states (or local
 Medicaid agencies of the states) that have made Medicaid
 payments on Beneficiary’s behalf during her lifetime.

 Upon receipt of such accounting, the Trustee will distribute
 all of the trust property as follows:

 (i) first, the Trustee must reimburse the state as provided
 in Section 4.01, entitled “Reimbursement to State,” below;

 (ii) second, the Trustee may pay the expenses specified in
 Section 4.02, entitled “Payment of Expenses and Taxes,”
 below[.] (emphasis added).

 Section 4.01 requires the Trustee to repay to state or local Medicaid agencies

“the lesser of” either the total amount of Medicaid benefits paid on Beneficiary’s

behalf during her lifetime, or “the entire balance of the Trust Estate.” Section 4.02

states that upon “full reimbursement” to state and local Medicaid agencies, any funds

 - 14 -
 IN RE: SKINNER

 Opinion of the Court

remaining in the trust may be used for specified purposes, including “Beneficiary’s

funeral expenses.” These “payback” provisions, which are required for a trust to

comply with U.S.C. § 1396p(d)(4)(A), establish that upon termination of the trust,

Medicaid is to be repaid first, even if this requires depletion of the entire trust.

 The requirement that, upon termination of the trust, the State must be

reimbursed before any other distribution may be made is restated in Article Three,

which addresses termination of the trust prior to the beneficiary’s death. Section 3.04

of this article requires that, in the event of early termination of the Trust, “[t]he

following expenses and payments are examples of some of the types [of payments] not

permitted prior to reimbursement to North Carolina (or any other state) for medical

assistance . . . (iv) funeral expenses[.]” This section simply means that the order of

payments upon termination is the same for both termination upon death of the

beneficiary and for early termination.

 These provisions serve the express purpose of ensuring that, upon termination

of the Trust, Medicaid agencies are reimbursed before any other expenses, including

funeral expenses, may be met with Trust funds. However, the provisions dealing

with the order of repayment upon termination of the Trust do not govern the

allowable expenditures during the Beneficiary’s lifetime. The Trust does not bar the

use of Trust funds to purchase a prepaid burial insurance policy. The assistant clerk

of court’s order cites no legal authority for the proposition that SNT funds cannot be

 - 15 -
 IN RE: SKINNER

 Opinion of the Court

used to purchase prepaid burial insurance. In fact, the expenditure was approved by

the Medicaid provider prior to being purchased. The clerk made an error of law by

failing to distinguish between the use of Trust funds for funeral expenses after

termination of the Trust and use of Trust funds for purchase of prepaid funeral or

burial insurance during the Beneficiary’s lifetime.

 VII. Purchase of House, Appliances, and Furniture

 A. Introduction

 In the order removing Mr. Skinner as trustee, the assistant clerk of court made

several findings relevant to the use of Trust assets to purchase a home in which Mrs.

Skinner and Mr. Skinner were living at the time of the hearing:

 21. Mr. Skinner also used the Trust assets to purchase a
 house (Wake Co. Deed Book 014713, Page 01402-06), new
 furniture, [and] new appliances[.]

 22. Mr. Skinner resides with [Mrs. Skinner] in the house
 purchased by the Trust and he benefits from the Trust
 purchases and expenditures relating to the house.

 23. The terms of the Trust require that the Trust assets be
 used for [Mrs. Skinner’s] sole benefit.

 The assistant clerk of court reached the following conclusions of law that

appear to be related to Mr. Skinner’s use of Trust funds to purchase a house,

furniture, and appliances for Mrs. Skinner:

 5. A Trustee is required, among other things, to administer
 a trust as a prudent person would by considering the
 purposes, terms, distributional requirements, and other

 - 16 -
 IN RE: SKINNER

 Opinion of the Court

 circumstances of the trust in the exercise of reasonable
 care, skill, and caution.

 6. Mr. Skinner has demonstrated that he lacks appropriate
 judgment and prudence.

 7. Mr. Skinner is in breach of his fiduciary duties pursuant
 to the terms of the Trust, the terms of the GOE Order, and
 applicable law.

 8. Mr. Skinner has wasted the Trust assets, mismanaged
 the Trust assets, and converted the Trust’s assets to his
 own use. [(the conclusion regarding conversion arises from
 Mr. Skinner’s use of trust funds to pay certain attorneys’
 fees, as discussed below)].

 The assistant clerk of court’s rulings reflect the clerk’s conclusions that (1) the

terms of the Trust did not permit the Trustee to use Trust assets for the purpose of a

house, furniture, or appliances; (2) the purchase of a house and furniture with Trust

assets constituted waste and mismanagement of Trust assets; and (3) the fact that

Mr. Skinner lived with Mrs. Skinner and presumably used the appliances and

furniture was, as a matter of law, a violation of the requirement that the Trust be

administered for the “sole benefit” of Mrs. Skinner. The first and third conclusions

are errors of law, and the second is unsupported by any record evidence.

 B. The Trust Permits the Purchase of a House, Furniture, and Appliances with

 Trust Assets

 On appeal, Mr. Skinner argues that he did not violate the terms of the Trust

or violate his fiduciary duty as a Trustee by using assets of the Trust to purchase a

house, furniture, and appliances for the beneficiary. We agree.

 - 17 -
 IN RE: SKINNER

 Opinion of the Court

 The distribution of Trust funds is addressed in Article Two of the Trust, which

states that:

 The Trustee will hold, manage, invest and reinvest the
 Trust Estate, and will pay or apply the income and
 principal of the Trust Estate in the following manner:

 During Beneficiary’s lifetime, the Trustee will pay from
 time to time such amounts from the Trust Funds for the
 satisfaction and benefit of [the] Beneficiary’s Special Needs
 (as hereinafter defined), as the Trustee determines in the
 Trustee’s discretion, as hereinafter provided. . . .

 Section 7.02(a) defines the term ‘special needs’ as the “Beneficiary’s needs that

are not covered or available from any local, state, or federal government, or any

private agency, or any private insurance carrier covering Beneficiary.”

 In this case, the evidence indicates that Mr. Skinner authorized the following

expenditures from Trust assets: (1) approximately $135,000 for the purchase of a

house, which is titled to the Trust; and (2) between $3200 and $4500 for furniture,

appliances, and repairs to the house. The uncontradicted evidence shows that the

house, furnishings, and appliances are owned by the Trust; the house is handicapped

accessible; the location of the house, which is close to where Mrs. Skinner previously

lived, is helpful to Mrs. Skinner, given her cognitive limitations; and the purchase of

a house was something that Mrs. Skinner had wanted and that had improved the

quality of her life. Therefore, as a general proposition, these expenditures were clearly

within the Trust’s definition of “special needs.” The purchase of a house, furniture,

and appliances fits squarely within the permissible uses of Trust assets under the

 - 18 -
 IN RE: SKINNER

 Opinion of the Court

terms of the Cathleen Bass Skinner Special Needs Trust. The assistant clerk of court

erred as a matter of law by ruling otherwise.

 C. No Evidence Suggests Trust Assets were Wasted

 Mr. Skinner also argues that the assistant clerk of court erred by concluding

that Mr. Skinner had failed to manage the trust in a prudent manner and that the

Trust assets had been “wasted” and “mismanaged.” We agree, and conclude that the

clerk’s findings and conclusions on this issue are unsupported by any record evidence.

 Although some funds were spent on furniture and appliances for the house, the

bulk of the Trust expenditure was the purchase of a handicapped accessible house,

which is titled in the name of the Trust and in which Mrs. Skinner has an equitable

ownership interest. Upon Mrs. Skinner’s death, the house will be an asset of the

Trust that could be sold and used to repay her Medicaid benefits. If the funds are

needed prior to Mrs. Skinner’s death, the house may be sold at that time. Therefore,

the money is not “gone” but has been invested in real estate, which is permitted under

the Trust provisions. The wisdom of this investment is a separate question, but it is

factually and legally inaccurate to state that the Trust assets were “wasted” or

“depleted” in the absence of any findings regarding the wisdom of this particular

investment.

 The fact that the purchase of a house is authorized by the terms of the Trust

does not necessarily mean that it was a wise investment. Under specific factual

 - 19 -
 IN RE: SKINNER

 Opinion of the Court

circumstances the purchase of a house might constitute an imprudent investment or

a wasteful use of the assets of a trust. This might be the case if, for example, evidence

were introduced showing that the house was in serious disrepair, was in a

neighborhood with declining real estate values, was overpriced, or was

inappropriately large or luxurious for the beneficiary’s needs and circumstances.

 However, in this case, the only evidence introduced on this subject indicates

that the house was purchased for the relatively modest sum of $135,000, an amount

which was less than its appraised value. There was no other evidence regarding

whether the house was a prudent investment of the Trust assets. Nor was evidence

introduced regarding the costs or savings attributable to Mrs. Skinner’s living in her

own house, with Mr. Skinner providing care for her at no charge. Therefore, the

assistant clerk of court’s conclusion that the purchase of a house, furniture, and

appliances demonstrated Mr. Skinner’s lack of prudence is unsupported by any record

evidence and is therefore erroneous as a matter of law.

 D. The Trust was Administered for the “Sole Benefit of Mrs. Skinner”

 Mr. Skinner argues next that the assistant clerk of court erred by finding that

because Mr. Skinner lived in the house with Mrs. Skinner, his wife, and presumably

used the furniture and appliances, that Mr. Skinner “benefitted” from the purchase

of a house and furniture. On this basis the assistant clerk of court concluded that

these purchases violated the requirement that the Trust be administered for the “sole

 - 20 -
 IN RE: SKINNER

 Opinion of the Court

benefit” of Mrs. Skinner. In reaching this conclusion, the assistant clerk of court

apparently employed a personal, colloquial definition of “benefits.” Mr. Skinner

contends that under the relevant Medicaid and Social Security regulations, and

pursuant to the interpretation of these regulations by the Wake County agencies

charged with administration of these programs, the clerk erred in its interpretation

of the term “sole benefit.” We agree and conclude that an examination of the relevant

regulations in the context of trust common law and the common sense realities of the

life of any person, and especially of the challenges faced by a disabled person, makes

it clear that the term “sole benefit” does not mean that a disabled person with a U.S.C.

§ 1396p(d)(4)(A) trust must live in a state of bizarre isolation in which no other person

may “benefit” from her house or furnishings.

 In concluding that the Trust was not administered for Mrs. Skinner’s sole

benefit, the assistant clerk of court applied an informal or conversational definition

of “benefits” as arising, not from the legal or financial effect of transactions involving

Trust assets, but as depending instead on whether Mr. Skinner used or enjoyed - and

thus “benefitted” from - the house, furniture, and appliances. The assistant clerk of

court’s ruling was not supported by citation to legal authority or by reference to any

negative actions taken regarding Mrs. Skinner’s receipt of Medicaid or SSI, such as

suspending or decreasing Mrs. Skinner’s benefits, and Mr. Skinner testified that he

 - 21 -
 IN RE: SKINNER

 Opinion of the Court

consulted with and had the approval of local aid agencies before making the purchase

with trust funds.

 The assistant clerk of court’s interpretation of the legal term “sole benefits”

would lead to an absurd result. Members of the general population are free to

determine with whom to live and socialize, and how to entertain or otherwise interact

with other people. Under the assistant clerk of court’s interpretation of the

requirement that a U.S.C. § 1396p(d)(4)(A) trust be administered for the “sole benefit”

of the beneficiary, if a trustee uses the assets of a special needs trust to purchase

items such as a handicapped accessible home, specially equipped car, or furniture,

then the disabled beneficiary must either live alone or charge “rent” to her husband,

who presumably must have his own separate furniture, washer and dryer, etc. The

beneficiary of a U.S.C. § 1396p(d)(4)(A) trust could not allow another to drive or ride

in her specially equipped car, to watch her TV, or have a visitor for supper, lest the

other person’s use of the dishes, enjoyment of a television program, or shared ride to

a restaurant constitute a violation of the “sole benefit” rule. The clerk’s interpretation

is particularly absurd given the likelihood that a disabled person may need assistance

from someone living in the home.

 We wish to emphasize that in our analysis of this issue we do not consider the

clerk’s evaluation of the weight or credibility of any evidence, but only the clerk’s

ruling on the meaning of the legal term “sole benefit.” It is long established that an

 - 22 -
 IN RE: SKINNER

 Opinion of the Court

appellate court should, when possible, avoid a statutory interpretation that yields an

unjust or absurd result:

 “The Court will not adopt an interpretation which
 resulted in injustice when the statute may
 reasonably be otherwise consistently construed
 with the intent of the act. Obviously, the Court
 will, whenever possible, interpret a statute so as to
 avoid absurd consequences.”

Nationwide Mut. Ins. Co. v. Mabe, 342 N.C. 482, 494, 467 S.E.2d 34, 41 (1996)

(quoting Sutton v. Aetna Cas. & Sur. Co., 325 N.C. 259, 265, 382 S.E.2d 759, 763

(1989)). Moreover, our review of the relevant statutes and regulations leads us to

conclude that there is no indication that the legal conclusion reached by the assistant

clerk of court correctly interpreted U.S.C. § 1396p(d)(4)(A), or that it comports with

North Carolina trust law.

 At the outset, we note that there appear to be no appellate cases in which a

Court has held that the use of assets in a U.S.C. § 1396p(d)(4)(A) trust to purchase a

house in which the beneficiary lives with his or her spouse or family members

constitutes a per se violation of the sole benefit rule, without regard to the specific

circumstances of the purchase. Given that Congress passed the legislation

authorizing § 1396p(d)(4)(A) trusts in 1993, we believe that the absence of any cases

that have applied the definition utilized by the assistant clerk of court indicates that

the agencies charged with administration of Medicaid and Social Security have not

taken the position espoused by the assistant clerk of court. Moreover, Mr. Skinner’s

 - 23 -
 IN RE: SKINNER

 Opinion of the Court

uncontradicted testimony was that he had obtained the approval of the local

administrators of Medicaid and Social Security prior to purchasing the house and

other items.

 Nor is the assistant clerk of court’s position supported by the relevant

regulations. The Social Security Administration (SSA) issues a Program Operations

Manual System, known as POMS, that instructs SSA employees on the SSA’s

interpretation of U.S.C. § 1396p(d)(4)(A). “The POMS represent ‘the publicly

available operating instructions for processing Social Security claims.’ The Supreme

Court has stated that ‘[w]hile these administrative interpretations are not products

of formal rulemaking, they nevertheless warrant respect.’ ” Kelley v. Comm’r of Soc.

Sec., 566 F.3d 347, 351 n.7 (3rd Cir. 2009) (quoting Wash. State Dep’t of Soc. & Health

Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385, 154 L. Ed. 2d 972, 986

(2003)).

 The Medicaid statute is complex, and the day-to-day
 application of the statute has been largely left to
 administrative agencies. Where that is the case, a court
 construing a statute will often look to the manner in which
 the administrative agencies have interpreted that statute,
 giving deference to the construction placed on the statute
 by presumed experts in the field.

Hobbs v. Zenderman, 542 F. Supp. 2d 1220, 1228 (D.N.M. 2008) (citation omitted),

aff’d, 579 F.3d 1171 (10th Cir. N.M. 2009).

 POMS Transmittal 48, SI 01120 TN 48, effective 15 May 2013, “modified

[SSA’s] policy on how to interpret the ‘sole benefit’ requirement for special needs and

 - 24 -
 IN RE: SKINNER

 Opinion of the Court

pooled trusts[,]” which includes a trust established under U.S.C. § 1396p(d)(4)(A).

Transmittal 48 states in relevant part that:

 2. Trust established for the sole benefit of an individual.

 a. General rule regarding sole benefit of an individual.

 Consider a trust established for the sole benefit of an
 individual if the trust benefits no one but that individual,
 whether at the time the trust is established or at any time
 for the remainder of the individual's life. Except as
 provided in SI 01120.201F.2.b. in this section and SI
 01120.201F.2.c. in this section, do not consider a trust that
 provides for the trust corpus or income to be paid to or for
 a beneficiary other than the SSI applicant/recipient to be
 established for the sole benefit of the individual.

 b. Exceptions to the sole benefit rule for third party
 payments. Consider the following disbursements or
 distributions to be for the sole benefit of the trust
 beneficiary:

 Payments to a third party that result in the receipt of goods
 or services by the trust beneficiary[.] . . .

 The SSA’s general definition of “sole benefit” is somewhat circular, as it defines

a “sole benefit” trust as one that “benefits no one but that individual.” The listed

exception makes clear, however, that payment to a third party for a house, furniture,

or appliances does not violate the sole benefit requirement. Similarly, the North

Carolina Adult Medicaid Manual, in discussing the sole benefit requirement of a

U.S.C. § 1396p(d)(4)(A) trust, states that “Sole benefit means that any real or

personal property which is capable of being titled and is purchased by the trust must

be titled solely in the name of the trust,” exactly as was done in the present case.

 - 25 -
 IN RE: SKINNER

 Opinion of the Court

 Based upon a review of the regulatory definitions and the common law

principles of trust law, the reasonable interpretation of the “sole benefit” rule for a

U.S.C. § 1396p(d)(4)(A) trust is that:

 1. The trust must have no primary beneficiaries other than
 the disabled person for whom it is established.

 2. The trust may not be used to effect uncompensated
 transfers or other sham transactions. For example, the sole
 benefit provision would be violated if the beneficiary’s
 parents funded the trust with the assets of the beneficiary
 and then had the beneficiary give the money to her parents
 in a sham transaction.

 3. The trust is one in which the trustee does not have a
 duty to balance the fiduciary benefit to the beneficiary with
 a duty to ensure that funds remain for creditors such as
 Medicaid or for contingent beneficiaries.

 4. When trust assets are used for investments, the
 financial and legal benefit of these transactions must
 remain with the trust.

 In this case, Mrs. Skinner is the only primary Beneficiary named in the Trust.

The house purchased with Trust assets is titled in the name of the Trust. (Mrs.

Skinner would be considered to be living in her own house based on her equitable

ownership of the residence.) The accrual of equity in the house or increase in the

house’s market value remains with the Trust, and thus is for Mrs. Skinner’s legal

benefit. The use of Trust assets to purchase a house, furniture, and appliances for

Mrs. Skinner was an expenditure that resulted in her receiving goods. We conclude

that the Cathleen Bass Skinner Special Needs Trust was established, and is being

 - 26 -
 IN RE: SKINNER

 Opinion of the Court

administered, for Mrs. Skinner’s sole benefit. We have reached this conclusion

without consideration of any aspect of this case that might implicate the weight or

credibility of evidence, such as Mr. Skinner’s testimony that Mrs. Skinner’s parents

wanted her to have a house. Instead, we have based our conclusion solely upon the

undisputed terms of the Trust and the applicable jurisprudence.

 VIII. Use of Trust Funds for Mr. Skinner’s Attorneys’ Fees

 Section 5.03 of the Cathleen Bass Skinner Special Needs Trust states that:

 The Trustee may retain and pay for attorneys . . . and any
 other professional[s] required for Beneficiary’s benefit in
 the discretion of the Trustee, subject to the limitations set
 forth in this trust.

 Specifically, the Trustee may pay for attorney fees and
 disbursements and court fees related to (i) any
 guardianship proceeding pertaining to Beneficiary . . . and
 (ii) attorney fees related to the preparation, funding,
 maintenance, and administration of this trust.

(emphasis added). The record indicates that Mr. Skinner used Trust assets to

reimburse himself for attorneys’ fees incurred in connection with guardianship

proceedings that took place prior to establishment of the Cathleen Bass Skinner

Special Needs Trust. The assistant clerk of court concluded that the Trust funds

could not properly be used to reimburse these attorneys’ fees because the fees arose

from the Mr. Skinner’s research into whether he could legally marry Mrs. Skinner

and the proceedings for him to be appointed as her guardian, rather than pursuant

 - 27 -
 IN RE: SKINNER

 Opinion of the Court

to guardianship proceedings occurring after Mr. Skinner was appointed Mrs.

Skinner’s guardian.

 The relevant Trust provisions are ambiguous, in that they allow

reimbursement for attorneys’ fees “related to (i) any guardianship proceeding

pertaining to Beneficiary” without specifying that this means “any guardianship

proceeding pertaining to Beneficiary and that occurs after the trust is established.”

N.C. Gen. Stat. § 36C-10-1006 provides that a “trustee who acts in reasonable reliance

on the terms of the trust as expressed in a trust instrument is not liable for a breach

of trust to the extent that the breach resulted from the reliance.”

 Moreover, assuming that it was a violation of the Trust’s provisions for Mr.

Skinner to use Trust assets for this purpose, the assistant clerk of court made no

findings to support its implied conclusion that this error constitutes “a serious breach

of trust” as opposed to an honest mistake. The Official Comment to N.C. Gen. Stat.

§ 36C-7-706 states that:

 Subsection (b)(1) . . . makes clear that not every breach of
 trust justifies removal of the trustee. The breach must be
 “serious.” A serious breach of trust may consist of a single
 act that causes significant harm or involves flagrant
 misconduct. A serious breach of trust may also consist of a
 series of smaller breaches, none of which individually
 justify removal when considered alone, but which do so
 when considered together. (emphasis added).

 In this case, Mr. Skinner’s uncontradicted testimony was that he believed that

he could use Trust funds to reimburse himself for attorneys’ fees incurred in

 - 28 -
 IN RE: SKINNER

 Opinion of the Court

connection with the guardianship proceedings for Mrs. Skinner, although the fees

were incurred before he was named as GOE. In addition, the record indicates that

he agreed to repay the Trust when this error was pointed out. This single error would

not, standing alone, support a conclusion that Mr. Skinner had committed “a serious

breach of trust.”

 IX. Conclusion

 We conclude that we are not required to address Mr. Skinner’s compliance with

the Trust’s accounting requirement, because it was not included in the assistant clerk

of court’s order. We further conclude that the clerk’s order removing Mr. Skinner as

GOE and Trustee was based upon several significant errors of law. The assistant

clerk of court erred by concluding that the purpose of the Trust was to save money

for Mrs. Skinner’s future medical needs, and by holding that the Trust prohibited the

use of Trust assets for prepaid burial insurance. In addition, the assistant clerk of

court erred as a matter of law by ruling that the Trustee’s use of Trust assets to

purchase a house, furniture, and appliances violated the provisions of the Trust. The

clerk’s conclusion that these purchases were wasteful or imprudent was not

supported by any evidence. The assistant clerk of court made another error of law by

adopting a interpretation of the requirement that the Trust be for “the sole benefit”

of Mrs. Skinner that is not supported by the pertinent regulations or citation to

appellate authority. Finally, the order does not contain findings that would support

 - 29 -
 IN RE: SKINNER

 Opinion of the Court

the clerk’s implied conclusion that Mr. Skinner engaged in a serious breach of trust

by using Trust assets to pay for attorney’s fees incurred for guardianship proceedings

occurring prior to establishment of the Trust.

 We agree with the dissent that an appellate court should not reweigh the

evidence, second-guess the fact finder’s determinations of the weight or credibility of

the evidence, or substitute its judgment on a matter committed to the discretion of

the trial court. We have adhered to these well-known principles, and there are no

factual findings or discretionary decisions by the clerk that we have failed to respect.

Nor are we suggesting that the assistant clerk of court’s subjective judgment on the

merits of Mr. Skinner as a GOE or Trustee was unreasonable. However, for the

reasons discussed above, we conclude that the Order removing Mr. Skinner as

Trustee of the Cathleen Bass Skinner Special Needs Trust and as GOE was based on

several significant errors of law and must be reversed for application of the proper

legal standards.

 REVERSED.

 Judge DILLON concurs.

 Judge BRYANT dissents by separate opinion.

 - 30 -
 No. COA15-384 – In re: Skinner

 BRYANT, Judge, dissenting.

 The majority opinion reverses the superior court’s order, which affirmed the

Assistant Clerk of Court’s (the “Clerk’s”) order, by determining that the Clerk’s order

contains findings that are not supported by the evidence and conclusions that are

legally erroneous. Because the majority opinion functions to essentially reweigh the

evidence, despite its many disclaimers to the contrary, and disregards the deferential

standard of review on appeal, I respectfully dissent.

 The decision to remove a trustee is “left to the discretion of the clerks of

superior court,” or, in [some] case[s] the trial court, [and this Court’s] review is limited

to determining whether the trial court [or clerk] abused its discretion. In re Estate of

Newton, 173 N.C. App. 530, 539, 619 S.E.2d 571, 576 (2005) (emphasis added) (citing

White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)). “Under this standard,

we accord ‘great deference’ to the trial court, and its ruling may be reversed only upon

a showing that its action was ‘manifestly unsupported by reason’ or ‘so arbitrary that

it could not have been the result of a reasoned decision.’ ” Id. (emphasis added)

(quoting White, 312 N.C. at 777, 324 S.E.2d at 833); see also Smith v. Underwood, 336

N.C. 306, 306, 442 S.E.2d 322, 322 (1994) (reversing this Court and determining the

trial court did not abuse its discretion by failing to remove a trustee).

 In determining whether a clerk of superior court or a trial court abused its

discretion in removing a trustee, this Court reviews the record in order to determine
 IN RE: SKINNER

 BRYANT, J., dissenting

whether “sufficient evidence supports the trial court’s findings of fact, and its findings

of fact support its conclusions of law.” Newton, 173 N.C. App. at 540, 619 S.E.2d at

577 (emphasis added).

 In reviewing the Clerk’s decision to remove Mr. Skinner as guardian, this

Court reviews “(1) whether the Assistant Clerk’s findings of fact are supported by the

evidence, and (2) whether those findings support the Assistant Clerk’s conclusions and

order.” In re Estate of Armfield, 113 N.C. App. 467, 469–70, 439 S.E.2d 216, 217

(1994) (emphasis added).2

 Furthermore, regardless of whether this Court is reviewing a Clerk’s order

removing a guardian or a trustee, “an appellate court, or a trial court engaged in the

appellate review of an order of the clerk of court, may neither reweigh the evidence,

nor disregard findings of fact when supported by competent evidence, even if the

evidence would also support a contrary result.” In re Estate of Van Lindley, No.

COA06-1281, 2007 WL 2247269, *10, 2007 N.C. App. LEXIS 1731, *28–29 (2007)

(unpublished) (citing Hearne v. Sherman, 350 N.C. 612, 620, 516 S.E.2d 864, 868

(1999) and Joyner v. Adams, 87 N.C. App. 570, 574, 361 S.E.2d 902, 904 (1987)); see

 2 I note also that “[a] guardianship is a trust relation and in that trust relationship the
guardian is a trustee who is governed by the same rules that govern other trustees.” Armfield, 113
N.C. App. at 474, 439 S.E.2d at 220 (emphasis added) (citing Owen v. Hines, 227 N.C. 236, 41 S.E.2d
739 (1947)) (affirming the removal of guardians of the estate). “Because respondents [guardians of the
estate] are governed by the same rules that govern other trustees they are ‘held to something stricter
than the morals of the marketplace.’ ” Id. at 475, 439 S.E.2d at 220–21 (quoting Wachovia Bank &
Trust Co. v. Johnston, 269 N.C. 701, 711, 153 S.E.2d 449, 457 (1967)).

 2
 IN RE: SKINNER

 BRYANT, J., dissenting

also Garrett v. Burris, 224 N.C. App. 32, 38, 735 S.E.2d 414, 418 (2012) (“It is not the

function of this Court to reweigh the evidence on appeal.”).

 Mr. Skinner’s removal as guardian of the estate and trustee is before this Court

after a proceeding before the Clerk of Superior Court and an appeal heard before the

superior court. The Clerk, after hearing evidence and arguments of counsel, made

findings of fact and conclusions of law and removed Mr. Skinner as guardian of the

estate and trustee. The superior court then affirmed the Clerk’s order, and stated

that

 [a]fter hearing the arguments of counsel and reviewing
 portions of the Record on Appeal, including in detail, the
 [Clerk’s] August 27, 2014 Order, the [superior] [c]ourt finds
 and concludes that the findings of fact in the August 27,
 2014 Order are supported by the evidence, the conclusions
 of law are supported by the findings of fact, and the August
 27, 2014 Order is consistent with the conclusions of law and
 applicable law.

[R. at 67].

 We should not, at this stage—far-removed from the original fact-finder—

“second-guess [both] the court’s [and the Clerk’s] reasoning and attempt to impose

any differing opinion we may have; [the Clerk] was in a better position than we to

assess” Mr. Skinner’s credibility over four years of incompetency, guardianship, and

removal proceedings involving both Cathy and Mr. Skinner. See Smith v.

Underwood, 113 N.C. App. 45, 56–57, 437 S.E.2d 512, 518 (1993) (John, J.,

 3
 IN RE: SKINNER

 BRYANT, J., dissenting

dissenting), rev’d by 336 N.C. 306, 442 S.E.2d 322 (1994) (per curiam) (reversing for

the reasons stated in the dissenting opinion). Indeed,

 [a] trial court may be reversed for abuse of discretion only
 upon a showing that its actions are manifestly unsupported
 by reason. A ruling committed to a trial court’s discretion
 is to be accorded great deference and will be upset only upon
 a showing that it was so arbitrary that it could not have
 been the result of a reasoned decision.

White, 312 N.C. at 777, 324 S.E.2d at 833 (emphasis added) (citation omitted).

 In reversing the superior court’s order, which affirmed the Clerk’s order

removing Mr. Skinner as trustee and guardian of the estate, the majority reaches the

conclusion that the decisions of the fact-finder (the Clerk) and the superior court—to

whom we accord great deference—were both “manifestly unsupported by reason.” See

id. (emphasis added). The Clerk made findings of fact which were supported by

competent evidence (with the exception of the Clerk’s finding that funeral expenses

are not permitted to be paid from the Trust, on which point I agree with the majority

that the Clerk erred in making this finding), and those findings in turn supported his

conclusion that Mr. Skinner “is unsuitable to continue serving as Trustee of the Trust

and [GOE].” The Clerk subsequently removed Mr. Skinner as Trustee and GOE, and

the superior affirmed this decision after “reviewing . . . in detail, the [Clerk’s] August

27, 2014 Order.” With the exception of the finding as to funeral expenses, the record

contains sufficient, competent evidence to support the Clerk’s findings of fact and

conclusions of law. Thus, I cannot agree with the majority’s conclusion that the

 4
 IN RE: SKINNER

 BRYANT, J., dissenting

orders of the Clerk and the superior court are both “manifestly unsupported by

reason.”

 Ultimately, it does not matter that the majority considers that the implications

of the Clerk’s ruling (that Mr. Skinner breached his fiduciary duties pursuant to the

terms of the Trust, based on, inter alia, his use of Trust assets to purchase a home in

which he also lived, in contradiction with the terms of the Trust which require that

Trust assets be used for Cathy’s “sole benefit”) would lead to an absurd result. This

is not the standard. The standard is whether the Clerk’s findings of fact are

supported by the evidence, which findings in turn support the conclusions of law. See

Armfield, 113 N.C. App. at 469–70, 439 S.E.2d at 217.

 According the proper deference to the Clerk’s findings, which support the

determination that Mr. Skinner “is unsuitable to continue serving as Trustee of the

Trust and [GOE],” as well as to the discretionary decision to remove Mr. Skinner, I

respectfully submit that the majority opinion erroneously reverses the trial court’s

order affirming the Clerk’s order for abuse of discretion, where it has not been

established “that its actions are manifestly unsupported by reason.” See White, 312

N.C. at 777, 324 S.E.2d at 833 (emphasis added) (internal citation omitted).

 For the forgoing reasons, I respectfully dissent.

 5